**William RUSSELL, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted June 28, 2002.
Decided Dec. 16, 2002.

William A. Russell, petitioner, pro se.

Paul R. Jordan, Harrisburg, for respondent.

BEFORE: SMITH–RIBNER, Judge, SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

William Russell, proceeding on his own behalf, petitions for review of an order of the Unemployment Compensation Board of Review (Board) that affirmed the order of an unemployment compensation referee determining that Russell was ineligible for benefits for a period of roughly two months under Sections 401(c) and 4(w)(1) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §§ 801(c) and 753(w)(1), because he did not file a timely application for benefits. Russell raises the following question: whether the Board erred in failing to exercise its discretionary power to resolve his case in a fair, equitable and just manner in view of the fact that if his original claim had been resolved in a timely manner and he had received timely notice that he was eligible for benefits he would have applied before the end of June 2001. Had he done

so his first quarter earnings from 2000 would have been included in his benefit year calculation and he would have been eligible for additional benefits.

## I

The Board's decision in an earlier phase of this litigation indicates that Russell was employed as an office manager for Human Resources Dialysis Clinic between September 1994 and May 2000. Russell suffers from non-Hodgkin's lymphoma, which affects his stamina and his ability to deal with stress. He informed management that his health and his ability to perform his job were being adversely affected by conditions at work; the company offered him a raise but did not otherwise attempt to address his problems. Russell resigned effective April 30, 2000, and he filed for benefits on June 4, 2000. The Beaver County Job Center disapproved benefits under Section 402(b) of the Law, 43 P.S. § 802(b) (voluntarily leaving work without cause of a necessitous and compelling nature).

The Board affirmed the referee's denial of benefits. Russell appealed to this Court, and while the appeal was pending the Board filed an application requesting remand of the case, which the Court granted on May 1, 2001. On remand the Board issued a second order on July 9, 2001, concluding that Russell had established that he had medical reasons for not continuing his employment and that he had made reasonable efforts to maintain his employment by notifying the employer and seeking some accommodation. The Board therefore ordered payment of benefits on Russell's original claim petition.

On July 25, 2001, the Job Center sent Russell a notice of exhaustion of unemployment compensation benefits, which stated in part:

This is to notify you that you are close to exhausting the amount of benefits payable on your UC claim. If you continue to file for full weeks of benefits, your entitlement to benefits will run out in approximately four weeks. Once your UC account balance reaches zero, you will not receive further benefits because your entitlement to unemployment benefits under the Pennsylvania UC Law will be exhausted.

You may file a new application for benefits under the Pennsylvania UC Law after the "Benefit Year Ending" date shown at the upper left margin of this form.

N.T., Ex. C–1. The "Benefit Year Ending" date indicated was June 2, 2001, i.e., approximately eight weeks *before* the notice was sent. Russell reported to his local office on August 3, 2001 to file a new application, and he requested that it be backdated to apply to the eight weeks ending June 9 through July 28, 2001.

The Job Center disapproved Russell's request for credit for the eight weeks, relying upon Sections 401(c) and 4(w)(1) of the Law. Section 401(c) provides that compensation shall be payable to an employee who is or becomes unemployed and who "[h]as made a valid application for benefits with respect to the benefit year for which compensation is claimed and has made a claim for compensation in the proper manner and on the form prescribed by the department[.]" Section 4(w)(1) defines "valid application for benefits" as

an application for benefits on a form prescribed by the department, which is filed by an individual, as of a day not included in the benefit year previously established by such individual, who (1) has been separated from his work or who during the week commencing on the Sunday previous to such day has worked less than his full time due to lack of

work and (2) is qualified under the provisions of section four hundred and one (a), (b) and (d) [43 P.S. § 801(a), (b) and (d) ].

■ On Russell's appeal, following a hearing at which only he appeared, the referee found that Russell did not make a new application in June 2001, in part over concerns about the wages that he earned during his base year period, and that the July 2001 notice did not explain why it was initiated then rather than earlier. The referee stated that, although Russell's circumstances were unique, he did nothing to file a new claim between June and July 2001, and the referee therefore denied the request for credit. The Board added a finding that the July 2001 notice did not misinform Russell in any way, and it affirmed.[1]

## II

Russell argues in this appeal that the Board should have exercised its discretionary power to resolve his case in an equitable manner. He asserts that the Board's failure to resolve his original claim filed June 5, 2000 in a timely manner caused him to suffer harm in not being eligible for benefits in his next benefit year. He notes

that at the outset the Job Center did not rule him ineligible until August 23, 2000, some eighty days after he filed his claim. There followed appeals to a referee and the Board and to this Court, after which the Board's chief counsel requested a remand so that the Board might reconsider its decision. Upon reconsideration the Board approved benefits, but the intervening delay meant that the resolution did not come until well after expiration of the original benefit year.

Russell asserts also that had he filed a new claim before June 30 and before the resolution of his original claim his application would have been denied because the facts would have been basically the same; however, his first quarter earnings for the year 2000 would have been included in his base year.[2] Without citation to specific statutory or case authority, Russell argues that the Board had discretionary powers to remedy such injustices and a duty to resolve his case in a fair, just and equitable manner.

■ The Board in response first states that its findings of fact are not at issue because Russell has not proffered a challenge to them.[3] The Court observes,

1. The Court's review of the Board's order is limited to determining whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial evidence. *Martin v. Unemployment Compensation Board of Review*, 749 A.2d 541 (Pa.Cmwlth.2000).

2. Section 4(a) of the Law, 43 P.S. § 753(a), defines "base year" as "the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year." Section 4(b), 43 P.S. § 753(b), defines "benefit year" with respect to an individual who files a valid application for benefits as the fifty-two consecutive week period beginning with the day that such application was filed, and thereafter the fifty-two consecutive week period beginning with the day as

of which such individual next files a valid application for benefits after the termination of his or her last preceding benefit year. If Russell had an application filed or deemed filed before June 30, 2001, then the base year would encompass the first quarter of 2000.

3. Without arguing the point, the Board asserts in a footnote that failure to cite to legal authority in a brief constitutes a waiver. It cites *Korn v. Epstein*, 727 A.2d 1130 (Pa.Super.1999), where the court cited the requirement of Pa. R.A.P. 2119(a) that the argument section of a brief be divided into as many sections as there are questions to be argued "followed by such discussion and citation of authorities as are deemed pertinent" and where the court deemed a particular issue waived when an appropriate argument was

however, that although Russell is not disputing any of the factual findings, the thrust of his position is that the Board constructively misled him by failing to provide a timely notice in regard to the approaching end of his eligibility year and his right to reapply for benefits. The Board asserts that the only provision under which Russell could hope to obtain a predating of his application is in the Board's regulation pertaining to the procedure for applying for benefits, specifically, in 34 Pa.Code § 65.41(c)(5):

> (c) An application for benefits may be deemed to be constructively filed as of the first day of a calendar week previous to the week which includes the day on which it is actually filed when, in the opinion of the Bureau, the claimant was prevented or persuaded, through no fault of his own, from filing the application because of one of the following reasons....
>
> . . . .
>
> (5) The refusal of the office to accept the application as a result of error or mistake shall permit not more than 52 weeks of predating.

The Board asserts that the Court stated in *Snipas v. Unemployment Compensation Board of Review*, 43 Pa.Cmwlth. 129, 401 A.2d 888 (1979), that the predating of a claim under Section 65.41(c)(5) will be approved when a claimant demonstrates that the late filing was due to some mistake on the part of Job Center personnel or that they misled the claimant. In *Snipas* the Court cited the general rule stated in *Swope v. Unemployment Compensation Board of* Review, 199 Pa.Super. 34, 184 A.2d 415 (1962), that a claimant who files

late is ineligible unless misled by unemployment officials. The Court held that the claimant was not entitled to predating to cover a period for which he was not awarded back wages in a civil service proceeding, when he admitted that he knew of the possibility of eligibility at the time but decided to devote full time to his civil service appeal. The Board also asserts that Section 65.41(c)(5) by its terms applies only to actions of Job Center personnel.

The Court concludes that Russell was misled by Job Center personnel and that under the circumstances of this case the Board erred by failing to permit the backdating of his application. There is no dispute that the Job Center failed to provide Russell with the standard notice of the approaching end of his benefit year. For reasons never explained, the compensation officials did not send such notice at a time when it would have provided Russell with necessary information about his rights and responsibilities and alerted him to the need to make further inquiries if he did not understand.

In *Menalis v. Unemployment Compensation Board of Review*, 712 A.2d 804 (Pa. Cmwlth.1998), a claimant was advised that he would not be eligible for benefits because of his receipt of a pension, but he was instructed to file claims and to report to the local office pending the outcome of his appeal. The claimant filed claims and received benefits for a period. When the benefits stopped, he assumed that it was because he began to receive his full pension, and he stopped filing claims. After he won his appeal and it was held that the pension was not to be offset, he sought to file backdated claims for the period when

---

not developed. This Court, however, has considered the merits of particular cases where defects in the brief did not preclude meaningful appellate review or result in waiver of issues. *See Roseberry Life Ins. Co. v. Zoning*

*Hearing Board of the City of McKeesport*, 664 A.2d 688 (Pa.Cmwlth.1995). In the present case the Court can discern the argument raised by Russell, and it deems review to be possible.

he did not file. The Court affirmed the Board's denial of the request because the claimant was not misled by anyone at the local office, and he had read the rules for reporting requirements. The Court noted that the claimant did not contact the office to inquire why his benefit checks had stopped, although he admitted that he had done so on an earlier occasion. The claimant was not misled, but he assumed on his own that he was no longer qualified, and he stopped reporting.

In the present case, had the Job Center provided Russell with the standard notice and had he decided on his own not to file a new claim, the situation would be similar to *Menalis*. Here, however, Russell did not have the opportunity make such a decision because the Job Center officials waited until after the Board's decision on remand to provide notice. They then sent a letter near the end of July 2001 that should have been sent near the beginning of May 2001, which purported to provide "notice" of an impending deadline that elapsed two months before the notice was sent. The Court concludes that Russell was misled by compensation officials within the meaning of *Snipas* and *Menalis*. Therefore, the Board's order is reversed.

### ORDER

AND NOW, this 16th day of December, 2002, the order of the Unemployment Compensation Board of Review is reversed.